IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Minh Hong,

                Plaintiff,

     v.

Morgan Stanley & Co., LLC, et al.,

                Defendants.

NO. C12-01756 TEH

ORDER GRANTING MOTION TO TRANSFER VENUE

This matter comes before the Court on Defendants' Motion to Transfer Venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). The hearing scheduled for October 22, 2012 on this matter was vacated on October 17, 2012. After careful consideration of the parties' papers and the law, the Court now GRANTS the motion.

**BACKGROUND**

Plaintiff was employed in a broker trainee program at Morgan Stanley's Ontario, California office, located in the Central District, from about May, 2003 until about September, 2007. Opposition ("Opp'n") at 3-4. She had lived in San Francisco prior to entering the program and intended to return to San Francisco once she finished the program and built up her "book of business." *Id*.; Hong Declaration in Opposition ("Hong Decl.") ¶ 3. She requested a transfer to the San Francisco office around the time she went out on disability leave in September or December, 2007. *See* Opp'n at 3, 4. A Human Resources ("HR") representative told her she would be able to transfer to the San Francisco office, and then later indicated she would not be able to transfer to the San Francisco office but could transfer to the Oakland or Palo Alto office instead. *Id*. at 4.

Plaintiff alleges that over her four-year period of employment at the Ontario office, she was subjected to a hostile and demeaning environment in which her supervisors showed

her pornography, took her to strip clubs and sex toy shops, and showed her nude photographs while commenting on women's bodies. First Amended Complaint ("FAC") ¶ 14. This conduct was regular and ongoing. In the most egregious instance, she alleges that her mentor Rick Fontana, who had supervisorial responsibilities over her, "grabbed [her] on the wrist, turned [her] around, and slapped [her] hard three times on [the] buttocks" while she was in his office. Hong Decl. at 8. He then told her that he had spanked her "because [she] was a 'bad girl' for moving three boxes of his belongings back into his office from the conference room." *Id.* Later on the same day, Plaintiff alleges:

> I opened the refrigerator in the break room in the office to get some milk, where Fontana and some other caucasian male employees had congregated nearby and were watching me intently. As I searched the refrigerator for the milk, I felt someone poke me in the lower buttocks. I turned around, and a couple of these gentlemen were laughing and snickering at me. Having been exposed to countless anal sex videos while employed at Morgan Stanley, I felt my safety was threatened and quickly left the room, upset and humiliated.

*Id.*

Plaintiff alleges that she spoke with various employees in the office about the conduct and made complaints. FAC ¶ 15. After four years of enduring this, Plaintiff had a psychological breakdown and went on disability leave. Opp'n at 3. She has been on disability leave for the past five years, and she suffers from "severe depression, post-traumatic stress disorder, dissociative disorder, high anxiety, panic attacks, self-mutilation, eating disorder, and suicidal ideation." Hong Decl. at 4. She avers that these disabilities are due to the conduct she suffered at Morgan Stanley ("MS"). Opp'n at 4.

In addition to the events in and around the Ontario office, Plaintiff alleges that she suffered sexual harassment during a training trip to San Francisco and a training trip to Dallas, Texas. Opp'n at 15. She alleges that her supervisor/mentor Rick Fontana also telephoned her after she moved to San Francisco and that this frightened her. *Id.* Other than these three incidents, all of the rest of the conduct alleged occurred in and around the Ontario office, in the Central District.

2

Plaintiff brings discrimination claims based on gender, race, national origin and disability under Title VII, the Americans with Disabilities Act, and the California Fair Employment and Housing Act, inter alia. Opp'n at 2.

**LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In order for a district court to transfer an action under section 1404, the court must therefore make two findings: First, that the transferee court is one where the action "might have been brought," and second, that the convenience of the parties and witnesses and the interest of justice favor transfer. *Gelber v. Leonard Wood Mem'l For Eradication of Leprosy*, No. C 07-01785 JSW, 2007 WL 1795746, at *2 (N.D. Cal. June 21, 2007) (citing *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985)). To make a determination on the convenience and interest of justice prong, the court considers: the plaintiff's choice of forum; the convenience of the parties and witnesses; the ease of access to sources of proof; local interest in the controversy; the familiarity of each forum with the applicable law; and the relative congestion in each forum. *Gelber,* 2007 WL 1795746 at *2 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986)).

In addition, Title VII has a special venue provision which provides that actions may be brought "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice . . . ." 42 U.S.C. § 2000e-5(f)(3). While Title VII's venue provision does not displace the traditional section 1404 analysis, "[t]he factors expressly identified as a basis for venue under Title VII . . . should . . . be key factors in analyzing the 'interests of justice' prong of section 1404(a) analysis." *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005) (citation omitted).

3

**DISCUSSION**

There is no dispute that Hong could have sued Morgan Stanley in the Central District of California, where Plaintiff was employed and where the majority of the alleged actions occurred. *See* 28 U.S.C. § 1391(b)(2). Therefore, Defendants meet their burden on the first prong.

On the convenience and interest of justice prong, the Court will consider the relevant factors in turn. It finds that while Plaintiff's choice of forum and Plaintiff's convenience favor keeping the case in the Northern District, convenience to Defendant and to the vast majority of the witnesses to the conduct at issue, as well as local interest in the controversy and access to records, all favor transferring the case.

**A. Plaintiff's Choice of Forum**

The parties heavily dispute how much deference should be accorded to the Plaintiff's choice of forum in this case. The baseline standard is that "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843. Defendant argues that here, however, because the only connection that this case has to the Northern District is the fact that Plaintiff moved here after the alleged discrimination took place, her choice of forum is entitled to only "minimal deference." Mtn. at 8 (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) and *Shalaby v. Newell Rubbermaid, Inc.*, No. C06-07026 MJJ, 2007 WL 3144357, at *6 (N.D. Cal. Oct. 24, 2007)). Plaintiff, on the other hand, argues that her choice of forum is entitled to even more deference than the baseline standard because the action is brought under Title VII. Opp'n at 10-11.

First, the Court distinguishes this case from those affording minimal deference to a plaintiff's choice of forum where the plaintiff does not reside in the chosen forum and/or the case is brought as a class action. *See, e.g., Lou*, 834 F.2d at 739 (named plaintiff's choice of forum given less weight in a class action); *Hawkes v. Hewlett-Packard Company*, No. CV–10–05957 EJD, 2012 WL 506569, at *4 (N.D. Cal. Feb. 15, 2012) (plaintiff's choice of forum deserving less weight because she did not reside in California); *Marinus v. Altria*

4

1  *Group Distrib. Co.,* No. C 11–4665 PJH, 2012 WL 588705, at * 5 (N.D. Cal. Feb. 22, 2012)
2  (granting transfer where named plaintiffs in a proposed class action did not live in the
3  Northern District).  Here, Plaintiff lives in the Northern District and sues in her individual
4  capacity.

5        Second, the Court notes that the transfer calculation should take into account Title
6  VII's venue provision.  While "ample case law supports the basic proposition that the statute
7  [Title VII] does not prohibit transfers away from a plaintiff's chosen forum," *Ellis*, 372 F.
8  Supp. 2d at 537, courts have given Title VII plaintiffs greater deference in light of "the desire
9  of Congress to afford citizens full and easy redress of civil rights grievances." *Id.* (internal
10 quotation marks and citation omitted); *see also Gelber,* 2007 WL 1795746 at *2.

11       Further, the language of the venue provision and at least one decision in this district
12 support the proposition that "a plaintiff's choice of forum is entitled to greater deference
13 prior to *intrastate transfer* in cases where venue is based on allegations that the locus of
14 unlawful employment practices occurred in that state, but not in that district." *Ellis*, 372 F.
15 Supp. 2d at 538 (emphasis added).  This is because the phrase "in the State" in section
16 2000e-5(f)(3)'s provision of venue "in any judicial district *in the State* in which the unlawful
17 employment practice is alleged to have been committed" would be rendered meaningless if a
18 plaintiff were never permitted, practically speaking, to litigate her action in "any district in
19 the state" except for the one where the unlawful employment practice occurred.  *See Ellis*,
20 372 F. Supp. 2d at 538 (applying the canon of construction that statutory interpretation
21 should not render language inoperative or superfluous).  The court in *Ellis* therefore
22 concluded that to fail to afford greater deference to a plaintiff's choice of forum in intrastate
23 transfer cases would "allow section 1404(a) to deprive the 'in the State' language of section
24 2000-e-5(f)(3) of any practical effect." *Ellis*, 372 F. Supp. 2d at 538.

25       For these reasons, the Court finds that in this Title VII action, Plaintiff's choice of
26 forum is entitled to considerable deference and weighs against transfer.

27 **B. Convenience of the Witnesses and Parties**
28       *i. Witnesses*

5

In determining whether this factor weighs in favor of transfer, the court must consider not only the number of witnesses each side has, but also "the importance of the witnesses." *Morris v. Safeco Ins. Co.*, No. C 07-2890 PJH, 2008 WL 5273719 at *4 (N.D. Cal. Dec. 19, 2008) (internal quotation marks and citation omitted).

Defendant contends that all of the employees who are alleged to have sexually harassed or discriminated against Plaintiff are located in the Central District, with the exception of Travis, a San Francisco-based trainee who Plaintiff alleges participated in inappropriate conduct during a company training program in Dallas. Plaintiff asserts that she would also call as a witness Candace Goins, who was with Plaintiff during the training trip, witnessed, and herself suffered from some of the same conduct as Plaintiff. Opp'n at 5. In addition, Plaintiff argues that she would call as witnesses some 19 health providers from the Bay Area, eight family members who have witnessed her suffering, 12 Morgan Stanley clients she has built up during her time at Morgan Stanley, and 11 friends "in a support network who are potential witnesses pertaining to emotional distress." Opp'n at 6. The Court agrees that some of the mental health providers and friends and/or family members might validly serve as witnesses to the damages portion of Plaintiff's lawsuit. Travis and Candace Goins could also potentially testify as to what happened in Dallas. Yet although the Dallas incident related to the pattern of conduct Plaintiff experienced in Ontario, it pales in severity in comparison to the pattern of daily harassment that allegedly took place in Ontario.

Located in the Central District are all of the major participants in the conduct, spanning a four-year period, about which Plaintiff is suing:

- Richard Fontana, Plaintiff's supervisor and mentor, who was the "worst offender," FAC ¶13, no longer works for MS but is still employed in the Central District. Mtn. at 5.
- Ryan Matsushita, who took Plaintiff to a sex toy shop in 2005, FAC ¶¶ 82-84, no longer works at MS but his last known address is in the Central District. Mtn. at 5.

6

1  •  James Filippi and Aaron Gabler, both alleged to have harassed Plaintiff, Gabler
2     physically in addition to verbally, no longer work at MS but continue to either
3     work or reside in the Central District. Mtn. at 5.
4  •  The Branch Managers who oversaw the Ontario branch during the period of
5     Plaintiff's employment and who Plaintiff alleges condoned or permitted the
6     offenders' conduct, continue to work at Morgan Stanley in the Central District.
7     Mtn. at 6.
8  •  Juanita Bright, to whom Plaintiff complained several times about the conduct
9     she was experiencing, continues to work at MS's Ontario Branch. Mtn. at 6.

The vast majority of the witnesses to the discriminatory conduct at issue are in the Central District. The Court finds that these are the essential witnesses to a fact-finder's consideration of what transpired in this case. Accordingly, the convenience of the witnesses strongly favors transfer.

*ii. Parties*

Plaintiff has provided no cases specifically instructing a court to look at a party's particular personal hardships or vulnerabilities. But given that the overarching analysis is one examining the "interests of justice," the Court finds that it can consider Plaintiff's mental health attributes and pregnancy. Plaintiff has her mental health support network, her treatment team, her family and friends, and her childcare support in the Northern District (she expects to give birth by the time this case goes to trial). Opp'n at 6-7. She states that it would be "very traumatic" for her to have to attend trial in Riverside, territory she covered while she was based in Ontario. *Id.* at 7.

Conversely, it is much more convenient for Defendants to litigate in the Central District and they would face financial burdens if forced to litigate here. The individual employees alleged to have violated Plaintiff's rights, as well as the events and records in this case, are all located in the Central District.

Overall, the concentration of the witnesses in the Central District tips the convenience factor in favor of transfer. While the Plaintiff's convenience stands on the other side, and

7

while her health is very fragile, the vast majority of the actions and events took place in Ontario.  Because the central witnesses are located in the Central District, the Court is persuaded that the convenience of the parties and witnesses favors transfer, notwithstanding Plaintiff's significant personal hardships and desire to remain close to home.

**C. Ease of Access to Sources of Proof**

"With technological advances in document storage and retrieval, transporting documents does not generally create a burden." *Hawkes*, 2012 WL 506569 at *5 (internal quotation marks and citation omitted).  Even though electronic records substantially alleviate the burden of accessing documents from remote locations, the factor of access to records is not a nullity. *See In Re: Horseshoe Entertainment,* 337 F.3d 429, 434 (5th Cir. 2003); *De Los Santos v. Panda Express, Inc.*, No. C 10–01370 SBA, 2011 WL 2560213, at *3 (N.D. Cal. June 28, 2011).

Plaintiff argues that records related to her worker's compensation and her disability are in Northern California.  Defendant argues that "all of the files related to her employment and to her clients and accounts that she serviced [client accounts] are maintained in the Ontario Branch or in the Los Angeles regional Human Resources department." Mtn. at 7.  Defendant also claims that documentation of Plaintiff's workman's compensation leave is also maintained by the Los Angeles HR office. *Id*.

The vast majority of the records relating to the conduct and actions at issue in this case are located in the Central District.  This factor therefore weighs in favor of transfer.

**D. Local Interest**

Among the public factors for a court considering a motion to transfer is the "local interest in having localized controversies decided at home." *Decker Coal Co.*, 805 F.2d at 843 (internal quotation marks and citation omitted).  Plaintiff argues that Morgan Stanley has a heavy presence in the Bay Area, that it conducted a training in San Francisco for all California employees, that while Plaintiff was working for the Ontario office she "spent a certain amount of that time period traveling up to the Bay Area to service more than a dozen clients[] and prospecting for more," and that Plaintiff was in the process of transferring to the

8

Bay Area when she left on disability leave. Opp'n at 9, 14. She essentially argues that her employment included actual and prospective contacts with the Bay Area.

While the Court is persuaded that this case is not without connection to the Northern District, given Morgan Stanley's state-wide presence, *see Marinus,* 2012 WL 588705 at *5, the vast majority of the sexual harassment and discrimination Plaintiff alleges occurred at the Ontario office. The HR department that oversaw the conduct is located in Los Angeles. The Court finds that the Central District has more of an interest in this controversy than does the Northern District.

**E. Familiarity of Each Forum with the Applicable Law**

This factor is neutral. Both district courts are equally familiar with federal law, as they are with California law. *See Hawkes*, 2012 WL 506569 at *5 (District courts are "equally capable of applying federal law").

**F. Relative Court Congestion in Each Forum**

Although less significant, the relative court congestion is a factor for the court to consider. *Gelber,* 2007 WL 1795746 at *5 (citing *Decker Coal Co.*, 805 F.2d at 843). The United States Courts *Federal Courts Management Statistics* indicate that the median time from a civil filing to disposition is 7.2 months in the Central District of California and 7.4 months in the Northern District of California, while the median times from civil filing to trial is 21.3 and 25 months, respectively. *See* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsSep2011.aspx. This difference is minimal, and the Court considers this factor to be essentially neutral.

**CONCLUSION**

The convenience of the vast majority of the essential witnesses to the conduct alleged in this case favors transfer, as does the stronger connection of the Central District to this case. On the other side, the deference due to

9

Plaintiff's choice of forum and her significant personal vulnerabilities weigh against transfer. Considering the overall convenience and interests of justice, and in light of the fact that the circumstances about which Plaintiff is suing transpired almost entirely in the Central District, the Court finds that transfer is warranted.

Accordingly, with good cause appearing for the reasons discussed above, Defendant's motion to transfer venue is hereby GRANTED. The Clerk shall close the file and transfer this case to the Central District of California.

**IT IS SO ORDERED.**

Dated: 10/18/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT